UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENARBLE CAMPBELL,<br><br>    Plaintiff,<br><br>  v.<br><br>W. STRUFFERT, et al.,<br><br>    Defendants. | Case No. 13-cv-05084-HSG (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 58, 108 |

**INTRODUCTION**

Plaintiff, a California prisoner currently incarcerated at California State Prison, Corcoran, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against staff and officials at Pelican Bay State Prison ("PBSP"), where Plaintiff was previously incarcerated. The operative pleading is Plaintiff's First Amended Complaint ("FAC"), which the Court screened on August 28, 2014. The Court found that, liberally construed, the FAC alleged the following cognizable claims against the following named Defendants:

(1) Defendants Sergeant W. Struffert and Officer D. McGuirt:

  (a) used excessive force on Plaintiff on January 20, 2012, in violation of the Eighth Amendment;

  (b) violated Plaintiff's First Amendment rights by retaliating against him and preventing him from filing a prison grievance relating to the aforementioned use of force incident;

  (c) violated Plaintiff's due process rights by confiscating his personal property, including his television, on January 20, 2012 without a hearing; and

  (d) violated Plaintiff's Eighth Amendment rights by causing him to be confined in an "empty cell" for "23 hours a day" and "caus[ing] [him] psychological suffering . . . ."

(2) Defendants McGuirt and officer J. Phillips falsified prison records on February 22, 2012 to indicate that Plaintiff refused to attend a disciplinary hearing "relative to [Rules Violation Report ("RVR")] #S12-01-0012" when Plaintiff claims that "[a]t no time did [he] ever refuse a hearing for RVR # S12-02-0012."

Dkt. 13 at 2 (citing Dkt. 11, FAC, at 3-15).[1]

On June 19, 2015, Defendants filed a motion for summary judgment.[2] On January 14, 2016, Plaintiff filed a cross-motion for summary judgment. Both motions are now before the Court for review.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

### I. Claims against Defendants Struffert and McGuirt

On January 19, 2012, while housed in PBSP's Administrative Segregation Unit ("ASU"), Plaintiff exposed himself by way of masturbation in front of correctional officer L. Lehman. After Officer Lehman informed him that she would be writing up a Rules Violation Report ("RVR"), Plaintiff threatened to file an administrative grievance against her. Struffert Decl. ¶¶ 3, 4 & Exs. A, B[3]; Pl.'s Depo. at 16:14-17:17, 18:3-12[4]; FAC at 6-7. Plaintiff received a disciplinary write-up—RVR number S12-01-0012—for indecent exposure. Struffert Decl. ¶ 4 &

---

[1] Page number citations for Plaintiff's filings refer to those assigned by the Court's electronic filing system and are located at the top right-hand corner of each page.

[2] Defendants initially filed a motion for summary judgment on January 23, 2015. On March 10, 2015, the Court denied the motion for summary judgment without prejudice to re-filing, after determining that the motion contained references to Plaintiff's deposition testimony that had been improperly obtained and was no longer admissible. All references herein to Defendants' motion for summary judgment are to the June 19, 2015 motion and declarations submitted in support thereof.

[3] Struffert filed an initial declaration on June 19, 2015 and a corrected declaration on June 23, 2015. *See* Dkt. Nos. 63, 69. References to the Struffert declaration are to the corrected declaration.

[4] Excerpts of Plaintiff's deposition testimony, from a later properly-obtained deposition, are located at Dkt. No. 90-1, Dkt. 108-1 (pp 57-69), and Dkt. No. 113.

Ex. B.; Pl.'s Depo. at 18:3-19, 19:13-20.

Because Plaintiff was a participant in the Correctional Clinical Case Management System ("CCCMS"), which affords privileges based on behavior, the issuance of RVR S12-01-0012 downgraded Plaintiff's behavioral-level status and triggered the immediate loss of his in-cell appliance privileges. Struffert Decl. ¶ 5 & Ex. C; Pl.'s Depo. at 16:4-10. Shortly after Defendant Struffert reported for duty on January 20, 2012, she was ordered to confiscate Plaintiff's "personal entertainment appliance." Struffert Decl. ¶¶ 4-6 & Ex. D; McGuirt Decl. ¶ 5. Defendant McGuirt accompanied Struffert to Plaintiff's cell to help carry out the order. Struffert Decl. ¶¶ 7, 8; McGuirt Decl. ¶ 5 & Ex. A.

Struffert and McGuirt arrived at Plaintiff's cell at approximately 11:15 a.m. on January 20, 2012, and Struffert ordered Plaintiff to submit to handcuffs (to "cuff-up") by passing his arms through the cuff-port on his cell door. Struffert Decl. ¶ 9 & Ex. D; McGuirt Decl. ¶ 6 & Ex. A; Pl.'s Depo. at 26:12-27:10. Plaintiff did not comply with Struffert's order, instead asking why she wanted him to cuff-up. Struffert Decl. ¶ 9; McGuirt Decl. ¶ 6; Pl.'s Depo. at 27:5-16. Struffert explained that she and McGuirt were there to carry out the confiscation order. Struffert Decl. ¶ 9 & Ex. D; McGuirt Decl. ¶ 6 & Ex. A; Pl.'s Depo. at 27:5-19. Plaintiff protested that Defendants lacked grounds to take his television. Struffert Decl. ¶ 9 & Ex. D; McGuirt Decl. ¶ 6; Pl.'s Depo. at 27:18-29:22. Plaintiff stated that he would be filing a grievance against Struffert and McGuirt for taking his property. FAC at 8.

Struffert displayed a canister of oleoresin capsicum ("O.C.") spray (i.e., pepper spray) and again ordered Plaintiff to cuff-up. Struffert Decl. ¶ 9 & Ex. D; McGuirt Decl. ¶ 6 & Ex. A. Plaintiff knew that his failure to comply with Struffert's orders to cuff-up might result in her use of the O.C. spray. Pl.'s Depo. at 34:14-18. The parties agree that Plaintiff then walked to the back

3

of his cell. Struffert Decl. ¶ 9 & Ex. D; McGuirt Decl. ¶ 6 & Ex. A; Pl.'s Depo. at 34:14-23. According to Plaintiff, he walked to the back of his cell without saying anything so that he could put on his jumpsuit and shoes before submitting to hand cuffs. FAC at 9; Pl.'s Depo. at 34:24-35:3. According to Defendants, Plaintiff replied "fuck that" as he walked to the back of his cell. Struffert Decl. ¶ 9. Struffert warned him that if he attempted to barricade himself in his cell, she would use the O.C. spray to prevent him from doing so. Struffert Decl. ¶ 9.

According to Defendants, once he reached the back of his cell, Plaintiff grabbed for state-issued property, including bedding, in what Struffert and McGuirt believed to be an attempt to barricade himself. Struffert Decl. ¶ 9 & Ex. D; McGuirt Decl. ¶ 6 & Ex. A. Struffert and McGuirt knew from training and experience that a barricaded inmate poses a threat to his own safety, to the correctional officers who have to remove him, and to institutional security. Struffert Decl. ¶ 13; McGuirt Decl. ¶ 9. In order to prevent Plaintiff from barricading, and to gain his compliance, Struffert dispersed four bursts of O.C. pepper spray through the cuff-port of Plaintiff's cell door. Struffert Decl. ¶¶ 9, 13 & Ex. D; McGuirt Decl. ¶¶ 6, 9 & Ex. A. Each burst, which was preceded by an order for Plaintiff to drop the state property, failed to bring Plaintiff into compliance. Struffert Decl. ¶¶ 9, 10, 13 & Ex. D; McGuirt Decl. ¶¶ 6, 9 & Ex. A.

According to Plaintiff, he reached for his jumpsuit, and Struffert started spraying the O.C. canister. Pl.'s Depo. at 38:14-39:7. Following the first spray, Plaintiff tried to grab for something to cover his face against the spray. *Id.* at 40:20-41:9. After the third spray, he was able to grab his blanket and put it over his head. *Id.* at 41:18-43:10.

The four bursts of pepper spray were short, lasting three seconds each, and they were blocked by Plaintiff's back. Struffert Decl. ¶¶ 9, 10; McGuirt Decl. ¶ 6. After Struffert determined that her use of the O.C. spray failed to gain Plaintiff's compliance, she dropped a

4

flameless T-16 O.C. grenade through his cuff-port. Struffert Decl. ¶¶ 10, 11 & Ex. D; McGuirt Decl. ¶ 7 & Ex. A. After the grenade went off, Plaintiff walked over to the cell door and complied with Struffert's orders to cuff-up. Struffert Decl. ¶ 11 & Ex. D; McGuirt Decl. ¶ 7; Pl.'s Depo. at 46:15-17, 47:16-18. McGuirt then applied hand-cuffs and, after the cell door was opened, leg-irons, to Plaintiff. Struffert Decl. ¶ 11 & Ex. D; McGuirt Decl. ¶ 7 & Ex. A.

After Struffert and McGuirt removed Plaintiff from his cell, they took him to the ASU yard's concrete shower to decontaminate from the O.C. spray. Struffert Decl. ¶ 12 & Ex. D; McGuirt Decl. ¶ 8 & Ex. A. Plaintiff was then escorted to a holding cell where he was examined by a licensed psychiatric technician who recorded that Plaintiff had no injuries. Struffert Decl. ¶ 12 & Ex. D; McGuirt Decl. ¶ 8 & Ex. A.; *see also* Pl.'s Depo. at 51:1-52:2.

Based on this incident, Struffert issued Plaintiff a disciplinary write-up—RVR number S12-01-0013—for willfully resisting, delaying, and obstructing a correctional officer. Struffert Decl. ¶¶ 18, 19 & Ex. F; Patterson Decl. ¶ 8 & Ex. B. On February 2, 2012, Plaintiff refused to attend his hearing on RVR number S12-01-0013 and refused to sign a CDCR 128-B form documenting his refusal to attend the hearing. Struffert Decl. ¶ 19. Plaintiff was found guilty of the violation and assessed a loss of 90 days' credit. *See* Patterson Decl., Ex. B; Struffert Decl., Ex. F.

While Plaintiff was in the holding cell, the ASU lieutenant ordered all of Plaintiff's personal and state-issued property removed from his cell. Struffert Decl., Ex. E. Neither Struffert nor McGuirt participated in the confiscation of Plaintiff's personal and state-issued property. Struffert Decl. ¶ 16; McGuirt Decl. ¶ 12.

An unidentified correctional officer escorted Plaintiff from the holding cell back to his assigned cell on January 20, 2012. When Plaintiff got there, he found that all of his personal and

5

state-issued property was gone. Pl.'s Depo. at 52:11-53:19. Plaintiff's bedding was returned to him the next day. Pl.'s Depo. at 54:3-13; FAC at 12.

According to Plaintiff, on January 20 and 21, 2012, he handed Struffert and McGuirt inmate appeals regarding the use-of-force incident, but those appeals were never processed. FAC at 11; Pl.'s Depo. at 58:16-60:22. According to Struffert and McGuirt, neither recalls Plaintiff handing them an inmate appeal on or after January 20, 2012, but if he did, it was their custom and practice to deposit all inmate appeals in the ASU tamper-proof inmate appeals box. Struffert Decl. ¶ 15; McGuirt Decl. ¶ 11.

## II.  Claims against Defendants McGuirt and Phillips

Plaintiff had two RVR hearings set for the morning of February 22, 2012. McGuirt Decl. ¶¶ 14-18; Phillips Decl. ¶¶ 4, 7, 10, 11 & Exs. A, B. One was on RVR number S12-01-0012 (regarding the January 19, 2012 indecent exposure incident), and the other was on RVR number S12-02-0002 (regarding an unrelated incident of delaying, resisting, or obstructing a peace officer). *See id.*

According to Defendants, on the morning of February 22, 2012, McGuirt sent Defendant Phillips to Plaintiff's cell to ask Plaintiff if he would attend the hearings on RVR number S12-02-0002 and RVR number S12-01-0012, respectively. McGuirt Decl. ¶¶ 14-18; Phillips Decl. ¶¶ 4-8. Phillips reported back to McGuirt that Plaintiff refused to attend either hearing. He also reported that Plaintiff refused to sign the two CDC 128-B forms documenting each refusal. McGuirt Decl. ¶¶ 15-18; Phillips Decl. ¶¶ 6-9.

McGuirt signed the 128-B forms indicating that Plaintiff refused to attend the hearings on the basis of Phillips's representations and his own knowledge that Plaintiff had refused to attend the earlier hearing on RVR number S12-01-0013 or sign a 128-B form documenting that refusal.

6

McGuirt Decl. ¶¶ 15; 19, 20 & Exs. B, C; Struffert Decl. Ex. F.

At the hearing on RVR number S12-01-0012, Plaintiff was found guilty of indecent exposure. Phillips Decl. ¶ 11 & Ex. B; Patterson Decl. ¶ 7 & Ex. B. He was assessed a loss of 90 days' credit for this rules violation. McGuirt Decl., Ex. C; Patterson Decl. ¶ 7.

According to Plaintiff, when Phillips came to Plaintiff's cell on the morning of February 22, 2012, he only asked Plaintiff if he wanted to attend the hearing on RVR number S12-02-0002. FAC at 13. Plaintiff asserts that at no time did he ever refuse a hearing on RVR number S12-01-0012, for the indecent exposure. FAC at 14. Plaintiff alleges that McGuirt and Phillips conspired to falsely certify that he refused to attend his hearing on RVR number S12-01-0012. FAC at 13.

## DISCUSSION

### I.   Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

7

file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)). The nonmoving party must show more than "the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby,* 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. *Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, plaintiff's verified FAC is

considered along with the evidence in his opposition and cross-motion in evaluating the cross-motions for summary judgment.

## II.     Retaliation Claim

Plaintiff argues that Struffert and McGuirt used force against him in retaliation for Plaintiff's threatening to grieve the confiscation of his personal property and television on January 20, 2012 and in retaliation for Plaintiff's threatening to file a grievance against correctional officer Lehman on January 19, 2012.

Retaliation by a state actor for the exercise of a constitutional right is actionable under § 1983. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The prisoner need not demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim. *See Rhodes*, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit). That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough. *Id.* at 569. To prove retaliation, a plaintiff must show that the defendant took adverse action against him that "would chill or silence a person of ordinary firmness from future First Amendment activities." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

A prisoner's § 1983 retaliation claim must rest on proof that he was retaliated against for exercising his constitutional rights and that the retaliatory action advanced no legitimate penological interest. *See Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). The prisoner bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of

9

which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 807 (alteration in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482).

Defendants have produced sufficient evidence to show they did not take an adverse action against Plaintiff in retaliation for Plaintiff's threatening to file inmate grievances. As discussed above, Defendants have submitted evidence showing that Plaintiff created the impression that he was resisting orders to "cuff up" when he moved to the back of his cell rather than placing his hands through the cuff port as instructed. Although Plaintiff asserts that he was merely trying to retrieve his jumpsuit before complying with orders, he admits that he did not communicate this to Defendants or request permission to first walk to the back of the cell to put on his jumpsuit. Plaintiff does not dispute that his conduct reasonably led Defendants to conclude that he was attempting to confine himself to his cell, thereby resisting orders. Nor does Plaintiff dispute that Defendants stopped using force as soon as he approached his cell door in compliance with their orders to "cuff up." Plaintiff argues that Struffert should have spoken with mental health staff to "minimize the situation." Dkt. No. 108, Am. Resp. to Mot. for Summ. J., at 12. He relies on a notation in an internal report reviewing the January 20, 2012 incident, in which ASU Lieutenant Kelley stated, "This inmate's behavior had steadily been deteriorating and he has been referred for a mental health evaluation." Dkt. No. 108-1 at 10. Even assuming this statement was evidence that Plaintiff had mental health issues that impaired his ability to comply with orders, there is no evidence that Struffert had knowledge of Plaintiff's mental health status. Nor is there any evidence that Plaintiff's mental health status, even had Struffert known of it, would have required

10

her to handle the January 20 incident any differently than she did, or that her failure to handle the situation differently was retaliatory. In sum, Plaintiff presents nothing more than conclusory allegations to support his retaliation claim. Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, a plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this"). The retaliation claim therefore fails due to the absence of evidence of a causal connection between the protected conduct and the adverse action.

To the extent Plaintiff claims that Defendants confiscated his property in retaliation for threatening to file a grievance against Officer Lehman, the claim fails for the same reasons, i.e., there is no evidence from which a reasonable trier of fact could find that Plaintiff's threat was the motivating factor behind the confiscation. Plaintiff argues that Defendants' claim that he lost his appliance privileges is a pretense and asserts that any rule holding that the RVR triggered the loss of his privileges was simply an "underground rule" and not actual policy. Dkt. No. 108 at 15. Plaintiff points to the PBSP ASU CCCMS Booklet, which provides that appliance restriction is a result of an RVR hearing, and argues that he had not yet been afforded a hearing at the time Defendants came to take his television. Dkt. No. 108 at 15-17; Dkt. No. 108-1 at 32. Even accepting as true that the confiscation was premature under prison policy, he does not dispute that the decision to confiscate Plaintiff's property was not made by Defendants at all, but rather by an ASU lieutenant, and that Defendants were following their superior's orders when they came to Plaintiff's cell on January 20, 2012. Struffert Decl. Ex. E. Nor does he submit evidence showing that the purported "underground rule" was applied selectively to him as a pretense for retaliation.

It is unclear whether Plaintiff's allegations regarding Struffert and McGuirt's failure to process his grievances were intended to state a separate claim. Plaintiff appears to allege that Defendants retaliated against him for filing grievances by failing to process those grievances. This is in effect a claim for denial of access to courts. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.

11

1995) (the right of meaningful access to the courts extends to established prison grievance procedures), *overturned on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). As such, Defendants are entitled to summary judgment given Plaintiff's concession that he was ultimately successful in filing his grievance regarding the January 20, 2012 incident. Dkt. No. 108 at 26. *See Lewis v. Casey*, 518 U.S. 343, 348-49, 352-53 & n.3 (1996) (when a prisoner alleges interference with access to courts, he must demonstrate actual injury such as the inability to meet a filing deadline or to present a non-frivolous claim).

To the extent Plaintiff states a retaliation claim based on Defendants' failure to process his appeals, Defendants are entitled to summary judgment because the record shows that Plaintiff never exhausted that claim through the administrative grievance process. *See* 42 U.S.C. § 1997e(a). Plaintiff does not contend that he was in any way prevented from filing a grievance on this subset of his retaliation claim. Indeed, even to the extent Plaintiff claims he was hindered in filing a grievance pertaining to the January 20, 2012 use of force incident, he admits that he was able to successfully file such grievance by simply handing it to a different officer on January 24, 2012. *See* Dkt. No. 108 at 26; Dkt. No. 108-1 at 42-47.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

### III.    Excessive Force Claim

Plaintiff claims that Defendants' use of O.C. spray constituted excessive force in violation of the Eighth Amendment. Defendants argue they are entitled to summary judgment on Plaintiff's excessive force claim based on qualified immunity, in addition to denying that they committed any constitutional violation. Defendants argue in the alternative that the excessive force claim is barred by *Heck*'s favorable termination rule[5], and that McGuirt is not liable for excessive force because he did not personally use O.C. on Plaintiff.

---

[5] The favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) is discussed more below in connection with Plaintiff's falsified records claim.

12

### A. Qualified Immunity Legal Standard

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "swiftly and firmly" in situations where the rules governing their actions are often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.*

To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 243.

With respect to the second prong of the qualified immunity analysis, the Supreme Court has recently held that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City & Cnty. of San Francisco, Calif. v. Sheehan*, ––– U.S.–––, 135 S.Ct. 1765, 1774 (2015) (citation and internal quotation marks omitted). This is an

"exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and internal quotation marks omitted). In conducting this analysis, the Court must determine whether the pre-existing law provided Defendants with "fair notice" that their conduct was unlawful. *Sheehan*, 135 S.Ct. at 1777.

### B. Analysis

Plaintiff contends that Defendants' use of O.C. spray amounted to excessive force in violation of his Eighth Amendment rights. For purposes of the qualified immunity analysis, the Court finds it unnecessary to assess the constitutionality of Defendants' use of force. Rather, the Court turns to the second prong of the *Saucier* test first and considers whether, based on the facts known to Defendants at the time of the incident, any reasonable correctional officer would have been on notice that using this amount of force in this manner was unlawful under clearly established law.

Based on the state of the law in January of 2012, the Court cannot conclude that Defendants' use of O.C. spray, viewing all facts in the light most favorable to Plaintiff, violated clearly established law. The Supreme Court instructs lower courts considering whether the law was clearly established to determine whether "a consensus of cases of persuasive authority [existed] such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2084 (2011). The Ninth Circuit has ruled that the "use of [tear gas] in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required." *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979). The court reasoned that in such circumstances, the substance may be a legitimate means to prevent small disturbances from becoming dangerous to other inmates or the prison personnel. *Id.* In *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (2013), the Ninth Circuit recognized that "very few of our cases deal with

14

constitutional limits on the use of pepper spray on confined inmates" and concluded that "the principle articulated in *Spain* with respect to tear gas also applies to pepper spray."

    Here, as discussed above, the undisputed evidence shows that Plaintiff failed to comply with Struffert's initial orders to "cuff up" and instead argued with her. Plaintiff then moved to the back of his cell, giving the impression that he was resisting orders. It was only at this point, in an effort to restore order and prevent the situation from escalating, that Struffert first applied force with an initial burst of O.C. spray, followed by the three subsequent bursts. Plaintiff was given an opportunity to comply prior to each burst. Where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable. *See Williams v. Benjamin*, 77 F.3d 756, 762-63 (4th Cir. 1996) (finding no Eighth Amendment violation where officer administered small quantity of pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 F. App'x 97, 102 (4th Cir. 2001) (upholding use of twelve bursts of pepper spray at three different times when inmate refused to comply with repeated commands to move from his cell); *Norris v. Detrick*, 918 F.Supp. 977, 983-84 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown).

    The undisputed evidence also shows that the four bursts of spray were short (three seconds each), and that they were blocked by Plaintiff's back. *See Spain*, 600 F.2d at 195 (holding tear gas may legitimately be used in small quantities to prevent small disturbances from becoming dangerous to other inmates or personnel); *see also Clement v. Gomez*, 298 F.3d 898, 903-04 (9th Cir. 2002) (two five-second bursts of pepper spray to stop fighting in a cell did not constitute excessive force). Plaintiff does not contest Defendants' evidence that they used the O.C. grenade only after they believed the spray had been insufficient to subdue him. *See Clement*, 298 F.3d at 903-04 (pepper-spraying fighting inmates a second time after hearing coughing and gagging from the initial spray was not malicious and sadistic for the purpose of causing harm, where the initial shot of spray had been blocked by inmates' bodies). Finally, as noted above, the undisputed

15

evidence shows that Defendants stopped using force as soon as Plaintiff approached his cell door to comply with orders.

In sum, as of January 2012, cases approved the use of pepper spray under circumstances similar to the undisputed facts here. After reviewing the law, the Court cannot conclude that any reasonable official acting as Struffert and McGuirt did "would have understood that he was violating [clearly established law]," or that "existing precedent . . . placed the statutory or constitutional question beyond debate." *Sheehan*, 135 S.Ct. at 1774.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's excessive force claim.[6]

## IV. Empty Cell Claim

Plaintiff claims that Defendants violated his Eighth Amendment rights by causing him to be confined in an "empty cell" for 23 hours after he returned to his own cell from the holding cell. FAC at 12. This included sleeping "on a cold metal bed, no mattress." Dkt. No. 108 at 27. The record shows that after the January 20, 2012 incident, an ASU lieutenant ordered the following items removed from Plaintiff's cell as a result of the new RVR generated for resisting a peace officer, RVR number S12-01-0013: property (72 hours), linen (1 day), clothing other than t-shirt and boxers (1 day), mattress (1 day), cup (1 day), shoes (1 day), razor (1 day), spoon (1 day), and pen filler (1 day). Struffert Decl., Ex. E.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Amendment also imposes duties on prison officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989). A prison official violates the Eighth

---

[6] Because the Court finds Defendants are entitled to qualified immunity on Plaintiff's excessive force claim, it need not address Defendants' alternative arguments with respect to this claim.

16

Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297).

Even viewing the evidence in a light most favorable to Plaintiff, the conditions he experienced after returning to his cell on January 20, 2012 were not sufficiently serious to violate the Eighth Amendment. In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider "the circumstances, nature, and duration of the deprivation." *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The more basic the need, the shorter the time it can be withheld." *Id.* Here, the record shows that the conditions did not last long (23 hours), and Plaintiff does not dispute that he was provided all of the basic necessities of life during this period, including shelter, food, drinking water, clothing, and medical attention. Enduring the conditions he describes for 23 hours is not the sort of deprivation that rises to the level of an Eighth Amendment violation. *See, e.g.*, *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without mattress for one night is insufficient to state 8th Amendment violation), *judgment vacated on other grounds*, 493 U.S. 801 (1989); *Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir.), *amended*, 75 F.3d 448 (1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); *Centano v. Wilson*, No. 11-15738, 479 F. App'x 101 (9th Cir. 2012) (unpublished memorandum disposition) (affirming conclusion that seven days in a contraband surveillance watch where inmate slept on a cold floor without a mattress or blanket did not rise to the level of a constitutional violation).

Further, the "empty cell" claim fails because Plaintiff fails to link Defendants to the claim. A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act, which he is legally required to do, that causes the deprivation of which the plaintiff complains. *See Leer v.*

17

*Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Id.* To defeat summary judgment, sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" actions which violated his or her rights. *Id.* at 634. Here, the undisputed evidence shows that the decision to confiscate Plaintiff's television was not made by Defendants at all, but rather by an ASU lieutenant. Struffert Decl. ¶¶ 4-7. Defendants did not personally remove the television. Struffert Decl. ¶ 16; McGuirt Decl. ¶ 12. After Plaintiff was removed from his cell and taken first to the ASU yard to decontaminate and later to the holding cell, Struffert and McGuirt had no further involvement with Plaintiff. Struffert Decl., ¶ 12; McGuirt Decl. ¶ 10. As noted above, following the January 20, 2012 incident, an ASU lieutenant ordered some additional items removed from Plaintiff's cell. Struffert Decl. Ex. E. Neither Struffert nor McGuirt participated in the removal of this property either. Struffert Decl. ¶ 16; McGuirt Decl. ¶ 12. Further, neither Struffert nor McGuirt placed Plaintiff back in his "empty cell" upon his return from the holding cell. Struffert Decl. ¶ 16; McGuirt Decl. ¶ 13. Nor did they ever order him to be placed in an "empty cell." *Id.* Because Plaintiff fails to raise a triable issue that Defendants were responsible for his "empty cell," the claim fails.

Finally, the undisputed evidence shows that Plaintiff failed to exhaust his "empty cell" claim through the administrative grievance process. Plaintiff does not contend that he was in any way prevented from filing a grievance on this claim.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's "empty cell" claim.

## V.     Deprivation of Property Claim

Plaintiff claims that Struffert and McGuirt violated his due process rights by confiscating his personal property without a hearing. The claim fails because, as discussed above, there is no evidence that Struffert and McGuirt confiscated his property or ordered the confiscation of his

18

property. *See Leer*, 844 F.2d at 633. Nor is there any evidence that Struffert and McGuirt denied him a hearing relating to his confiscated property.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's deprivation of property claim.

## VI. Falsified Records Claim

Defendants argue that Plaintiff's falsified records claim is barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In *Heck* the United States Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. A claim for damages arising from a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Id. Heck* also bars a claim for using the wrong *Wolff v. McDonnell*, 418 U.S. 539 (1974), procedures in a disciplinary hearing that resulted in the deprivation of time credits if "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment." *Edwards v. Balisok*, 520 U.S. 641, 645 (1997). A claim for damages based on allegations that an inmate was completely denied the opportunity to put on a defense and that there was deceit and bias on the part of the decisionmaker, for example, necessarily implies the invalidity of the punishment imposed and is barred by *Heck*. *See id.* at 646-47.

Plaintiff's falsified records claim implies the invalidity of the disciplinary proceedings against him. He alleges that Defendants used deceit to claim that he refused to attend his hearing, and that therefore he was completely denied the opportunity to put on a defense, in relation to RVR number S12-01-0012. Such a claim challenges the validity of his guilty finding on the RVR. Success on his claim would necessarily imply that he had been unconstitutionally deprived of the

19

90 days of credits. The Court therefore agrees that Plaintiff's falsified records claim is barred by the favorable termination rule set forth in *Heck*.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's falsified records claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Plaintiff's cross-motion for summary judgment is DENIED.

The Clerk shall enter judgment for Defendants and close the file.

This order terminates Docket Nos. 58 and 108.

**IT IS SO ORDERED.**

Dated:  3/22/2016

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge

20